IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**Donald K. Overstreet**, )
)
**Plaintiff,** )
)
vs. ) Case No. 3:12-cv-1314
) Senior Judge Nixon
**Carolyn Colvin,** ) Magistrate Judge Brown
**Commissioner of Social Security** )
)
**Defendant.**

**To: The Honorable John T. Nixon, Senior United States District Judge**

### Report and Recommendation

This action was brought under 42 U.S.C. §§ 405(g), 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("SSA") upon an unfavorable decision by the SSA Commissioner ("the Commissioner") regarding plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Title XVI of the Supplemental Social Security Income Act ("SSI"). 42 U.S.C. §§ 416(i), 423(d), 1382(c). For the reasons explained below, the undersigned **RECOMMENDS** that the plaintiff's motion for judgment on the administrative record be **DENIED** and the ALJ's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

Donald K. Overstreet ("Plaintiff") filed for DIB under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416 & 1382, on February 18, 2009. (Administrative Record ("AR"), Docket Entry ("DE") 10, p. 107-15) Plaintiff's claims are founded upon chronic pain due to rheumatoid arthritis, back, knees, insomnia, sleep apnea, migraine headaches, and chronic inner ear trouble. (AR at p. 123) Plaintiff's request was denied initially on July 17, 2009 (AR at pp. 61-63) and upon reconsideration on October 30, 2009. (AR at pp. 68-69)

Subsequent to Plaintiff's request, a hearing was conducted before an Administrative Law Judge ("ALJ"), Donald E. Garrison, on April 26, 2011. (AR, at p. 15) Present for the hearing were Plaintiff, his attorney Robert J. Parker, and vocational expert Lisa A. Courtney ("VE"). (AR at p. 12)

The ALJ denied Plaintiff's application on July 14, 2011 (AR at p. 9), and Plaintiff requested review of the ALJ's determination on September 8, 2011. (AR pp. 7) The SSI Appeals Council denied review of the ALJ determination on October 26, 2012 (AR at pp. 1-3), rendering the ALJ's determination the final determination of the Commissioner. (AR at p. 1)

Plaintiff brought this action in district court on December 20, 2012, seeking judicial review of the Commissioner's decision. (DE 1) The defendant filed answer and a copy of the administrative record on August 23, 2013. (DE 9, 10) Thereafter, Plaintiff moved for judgment on the administrative record on April 12, 2013 (DE 12), to which the defendant filed response on July 11, 2013, also moving for judgment on the administrative record (DE 15). Plaintiff filed reply on July 25, 2013. (DE 16)

This matter is properly before the court.

## II.  THE RECORD BELOW

### A. Medical Evidence

The record reflects that Plaintiff "previously received Social Security disability benefits from September 6, 1989, to August 26, 2004, when it was determined that [Plaintiff's] condition had improved such that he was able to engage in work activity." (AR at p. 12) On appeal, the SSA's determination was affirmed on April 28, 2006.[1] Plaintiff did not petition for review of that decision; thus, all findings and evidence through that time are taken as conclusive. *See*

---

[1]  The ALJ's prior findings and conclusions are included in the record. (AR at pp. 47-56)

*Drummond v. Commissioner of Social Sec.*, 126 F.3d 837 (6th Cir. 1997). The prior determination was not reconsidered and is not pertinent to the decision here. However, the record reflects that Plaintiff was being treated by two separate physicians at that time for the conditions alleged by Plaintiff here. Dr. Wayne Wells was Plaintiff's primary care physician and Dr. Kenneth Bartholomew was Plaintiff's pain care management provider. (AR at 239-387)

As of April 17, 2006, Plaintiff reported to Dr. Wells that his pain level was "moderate," and that he experienced "[n]o tremors, numbness/tingling, or dizzy spells." (AR at p. 332) Plaintiff reported to Dr. Bartholomew that his pain level was 8 on a scale of 10 on May 5, 2006. (AR at p. 405) At that time and all relevant times subsequent thereto, Plaintiff was prescribed Tylenol #4 with codeine to control that pain and he consistently reported significant relief while taking it as prescribed, or that the regimen was effective and working well. (AR at pp. 389, 392, 395, 397, 399, 401, 403, 405) Dr. Bartholomew's notes also reflect that Plaintiff's vital signs remained unremarkable over the period. (AR at pp. 330, 336, 339, 347, 351, 355, 359, 363, 366, 369, 372, 375, 378, 384, 389, 392, 395, 397, 399, 401, 403, 405) Despite a reduced range of motion in his lumbar spine, the strength in Plaintiff's lower extremities was "intact—5/5" and his "[s]ensation was intact to light touch." (AR at pp. 330, 336, 339, 347, 351, 355, 359, 363, 366, 369, 372, 375, 378, 384, 389, 392, 395, 397, 399, 401, 403, 405)

In June of 2006, Plaintiff reported to Dr. Wells that his pain was mild (AR at p. 338), but reported to Dr. Bartholomew the following month that his pain levels averaged 7 out of a possible 10. (AR at p. 403) On August 10, 2006, Plaintiff reported moderate pain to Dr. Wells but did not quantify it on a scale of 1 to 10. (AR at pp. 342-43) On September 7, 2006, Plaintiff reported that the pain was tolerable and quantified it as 5 out of 10. (AR at pp. 346-47) Plaintiff again reported his pain level at 5 out of 10 to Dr. Wells on October 18th, but reported to Dr.

Bartholomew three weeks later that it averaged 7 out 10.  (AR at pp. 351, 401)  On both November 2nd and 30th, Plaintiff reported that his pain levels ranged between 5 and 6 on a possible scale of 10.  (AR at pp. 354, 358)

On January 2, 2007, Plaintiff complained of "severe joint pain" to Dr. Wells but quantified the level of pain as ranging from 5 to 8 on a scale of 10.  (AR at p. 362)  Two weeks later Plaintiff quantified his pain levels as ranging between 7 and 9 to Dr. Bartholomew.  (AR at p. 399)  On February 1, 2007, Plaintiff reported mild pain to Dr. Wells and quantified it as 5 out of 10.  (AR at pp. 365-66)  On March 29, 2007, Plaintiff reported improvement in his pain levels to Dr. Wells, but once again quantified it as 5 out of a possible 10.  (AR at p. 371-73)  In April, Plaintiff reported to Dr. Wells that his pain levels were consistent and quantified them as 5 out of 10, but he expressed to Dr. Bartholomew that his pain level ranged from 4 to 7.  (AR at pp. 375, 397)

In June of 2007, Plaintiff again reported to Dr. Wells that his pain level remained constant at 5 out of 10 (AR at p. 381-82), and, the following month at his last appointment with Dr. Wells, Plaintiff reported that his pain was "mild" and quantified it as 4 out of a possible 10.  (AR at p. 383-85)  Later that same month, Plaintiff reported to Dr. Bartholomew that his pain levels ranged from 5 to 7 out of 10.  (AR at p. 395)  Urine tests performed during July of 2007 indicated codeine levels lower than anticipated, and Plaintiff was warned that failure to take his pain medications as prescribed would result in discharge from the pain medicine regimen.  (AR at p. 393)  Plaintiff again quantified his pain levels at 5 out of a possible 10 in October, and his urine tests again revealed that he was not taking his medications as prescribed.  (AR at pp. 392-93)  Plaintiff was discharged from the pain management program in November of 2007.  (AR at p. 390)

**B. DDS Expert Opinions**

Plaintiff was examined by Dr. Ashok Mehta, an internal medicine practitioner, on July 2, 2009, at the request of SSA. (AR at p. 423) Plaintiff recounted the myriad of problems he experienced with pain and his need for a cane. (AR at 423) Dr. Mehta observed that Plaintiff's appearance and vital signs were unremarkable, that Plaintiff was able to ambulate normally, but that he experienced decreased range of motion in his lumbar spine. (AR at pp. 423-24) According to Dr. Mehta, Plaintiff's flexion, which should normally be 90 degrees, is limited to 20 degrees and his extension and right & left lateral flexion, which should normally be 25 degrees, were measured as 10 degrees. (AR at p. 429) Dr. Mehta also noted the range of motion in Plaintiff's hip was reduced by nearly half. (AR at p. 430)

Based upon his examination, Dr. Mehta opined that Plaintiff can lift less than 10 pounds occasionally and a maximum of 10 pounds frequently. (AR at p. 427) Further, Dr. Mehta states that Plaintiff can stand or walk 6 hours out of an 8 hour day and can sit for 6 hours out of an 8 hour day. (AR at p. 428)

After a review of Plaintiff's medical records, Dr. Joe Allison opined that the functional impairment assessed by Dr. Mehta "is too restricted based upon [the] objective evidence in [the] file." (AR at p. 437) Dr. Allison's assessment of Plaintiff's functional capacity is that he can lift 20 pounds occasionally and 10 pounds frequently. (AR at p. 432) Like Dr. Mehta, Dr. Allison concluded that Plaintiff can stand or walk 6 out of every 8 hours during the average work day and he can sit for 6 hours. (AR at p. 432) According to Dr. Allison, there are no other limitations upon Plaintiff's ability to work. (AR at pp. 432-437) On October 28, 2009, Dr. Marvin Cohn affirmed Dr. Allison's assessment. (AR at p. 444)

Plaintiff underwent radiographic examination of his back and both knees on June 14, 2011. (AR at pp. 445-48) Despite "extensive facet degenerative changes," Dr. Richard Rieck noted that there were no obvious "fractures or subluxations[, . . . and Plaintiff's] sacrum and sacroiliac joints have normal appearance." (AR at p. 446) Likewise, as to both of Plaintiff's knees, Dr. Rieck noted that the "AP and lateral radiographs [revealed] no fractures; dislocations; soft tissue, bony or articular abnormalities." (AR at pp. 447-48) Dr. Rieck also noted that the "[j]oint spaces are well maintained[, and n]o obvious knee effusion is seen." (AR at pp. 447-48)

**C. Testimonial Evidence**

Plaintiff testified that he was 52 years of age at the time of the hearing, he had received a high school diploma, can read and write, and had earned an advanced degree from the Nashville School of Preaching. (AR at p. 30) Plaintiff lives "in a little trailer behind [his] mom and dad's house." (AR at p. 32) His parents pay his bills but Plaintiff does receive food stamps. (AR at p. 32) Although he preaches a few times a month for a small congregation, Plaintiff testified that he has not worked on a full time basis in the last fifteen years. (AR at p. 31) According to Plaintiff, he cannot work dependably due to the pain in his back and knee and the resultant fatigue from loss of sleep. (AR at p. 32) Plaintiff is only able to sleep one to one and a half hours per night. (AR at p. 35)

According to Plaintiff, he lost his insurance after the revocation of his disability benefits in 2006 and could not afford medical treatment. (AR at p. 33) Plaintiff also testified that he had not sought treatment at an emergency room or at the health department since last seeing Dr. Wells in 2006. (AR at p. 34) As to his back and knee pain, Plaintiff confirmed that he was treated by Dr. Wells and by Dr. Bartholomew for pain. Despite the lack of x-rays or MRI results in the file and his failure to see a knee or back specialist, Plaintiff testified that he has used a

cane for stabilization for approximately twenty years. (AR at pp. 32-33) When the ALJ asked about a doctor's prescription for the cane, Plaintiff first stated that Dr. Gaston had prescribed it for him "because [his] left knee is in real bad shape." (AR at pp. 32-33) However, when questioned further, Plaintiff altered that testimony to reflect that Dr. Gaston had "prescribed the pain" but the cane was not a "prescribed medical assistive device." (AR at p. 37)

Until 2007 Plaintiff received a prescription for Tylenol #4 with codeine. While receiving this pain medication, Plaintiff testified that his "quality of life really picked up . . . [and] he was doing real well." However, since losing his insurance Plaintiff is no longer able to bowl, go to stock car races, or go on mission trips. (AR at p. 36) At present, Plaintiff takes Tylenol extra-strength for to help with his pain. (AR at p. 36) As such, the only activities that he is able to participate in are preaching a couple of Sundays a month, watching television, going to the grocery store, and playing a hand of cards with his mother. (AR at p. 38) According to Plaintiff, he is able to sit through Sunday school or stand when delivering his sermons, but is generally unable to sit for more than thirty minutes at a time or stand/walk for more than forty-five minutes at a time. (AR at p. 36)

### III.    ANALYSIS

**A. Standard of Review**

The District Court's review of the Commissioner's denial of DIB is limited to a determination of whether those findings are supported by substantial evidence and whether correct legal standards were applied. 42 U.S.C. § 405(g); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). A finding of substantial evidence does not require that all of the evidence in the record preponderate in favor of the ALJ's determination, but does require more than a mere

scintilla to support a denial of DIB. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

The ALJ's determination is entitled to deference where "a reasonable mind might accept [the evidence in the record] as adequate to support" the ALJ's determination even though it could also support a different conclusion. *Rogers*, 486 F.3d at 241; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). "[F]ailure to follow the rules" promulgated to control the process of benefit determination "denotes a lack of substantial evidence, even where the ALJ's" determination is otherwise supportable. *Cole*, 661 F.3d at 937 (*quoting Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009))

## A. Determination of a "disability" under the SSA

To substantiate entitlement to DIB, a claimant must demonstrate "a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(a)(1)(E), (d)(1)(A). SSA's procedures require a five-step sequential assessment of whether: 1) a claimant has engaged in substantial gainful activity during the period under consideration; 2) the claimant has a severe medically determinable physical or mental impairment that significantly limits his ability to do basic work activities; 3) the claimant suffers from a severe impairment that meets or equals one of the listings in Appendix I Subpart P of the regulations and meets the durational requirements; 4) the claimant's impairment prevents him from doing past relevant work; and, if so, 5) is it possible for the claimant to transition to other work. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), (b)-(g).

**B. Ruling of the ALJ**

In his July 14, 2011, ruling, the ALJ denied Plaintiff's request for DIB. (AR at pp. 12-21) The ALJ found that Plaintiff retained the functional capacity to "lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk four hours in an eight-hour workday; sit six hours in an eight-hour workday; with occasional ability to climb, balance, stoop, crouch, kneel and crawl." (AR at p. 15) The ALJ found the lack of objective medical evidence, the opinions of the three medical experts, and Plaintiff's lack of credibility highly probative in making this assessment.

According to the ALJ, Plaintiff's medical record is "unimpressive and [] not indicative of disability." (AR at p. 16) These records show consistent improvement in Plaintiff's pain levels, that Tylenol #4 with codeine afforded substantial relief from his pain, that his vital signs were fairly unremarkable, that Plaintiff retained strength and sensory perception in his lower extremities, and that Plaintiff decreased the dosage of prescription pain medication while reporting improved pain levels. (AR at pp. 16-17)

According to the ALJ, these findings were confirmed by three medical experts.

Two State agency physicians, Joe G. Allison, M.D., and Marvin H. Cohn, M.D., agreed the claimant could perform a range of light work; while one-time examining physician, Ashok Mehta, M.D., limited the claimant to sedentary work, per lifting restrictions. However, the opinions of the State agency physicians are more consistent with the evidence as a whole as Dr. Metha's opinion seems too restrictive considering the evidence when viewed in its entirety. Consequently, they are accorded significant weight. Although the diagnostic test results were performed after the date last insured, they were also accorded significant weight. While they did show degenerative disc disease of the lumbar spine, it was notable that his bilateral knees were essentially normal.

(AR at p. 18)

The ALJ further found that

the claimant is not entirely credible regarding the severity of his impairments.

9

> Deference is given to the claimant, in that he lost his health insurance. However, there is simply no evidence after 2007, with the exception of a consultative examination performed in mid 2009. It is reasonable to assume that if the claimant is in as much pain as alleged, he would have sought treatment at an emergency room or medical facility that normally accepts patients at subsidized cost or no cost at least occasionally. Although examinations by the treating pain management physician did show decreased range of motion of the lumbar spine, he was consistently neurologically intact, while overall strength remained full in all muscle groups. Furthermore, the claimant typically ambulated with a normal gait. It is also significant that the claimant consistently admitted Tylenol #4 provided relief of his symptoms, but urinary drug screening normally showed sub-par levels. Finally, his symptoms do not prevent him from delivering sermons to his congregation twice a month. The claimant is not persuasive to the extent alleged.

(AR at p. 18)

## IV. CLAIMS OF ERROR

Plaintiff asserts that the ALJ erred in not affording the opinion of Dr. Mehta controlling weight, the ALJ erred in not affording Dr. Mehta's opinion more weight than either non-examining DDS expert, the ALJ failed to properly assess Plaintiff's credibility, and the ALJ's RFC assessment is fundamentally flawed because it does not accommodate Plaintiff's use of a cane for ambulation.

### A. *The ALJ failed to give proper weight to the Opinion of Dr. Mehta*

Plaintiff concedes that Dr. Mehta is only an examining source but argues that the ALJ erred by not giving controlling weight to his opinion. (Plaintiff's Motion, DE 12-1, pp. 7-10.) Further, even if Dr. Mehta's opinion is not entitled to controlling weight, Plaintiff asserts that the ALJ erred by affording more weight to the opinions of the two nonexamining DDS experts than to Dr. Mehta's opinion. The Commissioner argues that Dr. Mehta is not a treating physician, and, thus, his opinion is never entitled to controlling weight. (Response at p. 5) The Commissioner also argues that Dr. Mehta's opinion is contradicted by the record as a whole, which provides substantial evidence for the ALJ's decision to afford the opinions of the DDS

reviewing physicians more weight than Dr. Mehta. (Response at pp. 6-7) The Magistrate Judge agrees.

The Commissioner has "elected to impose certain standards on the treatment of medical source evidence." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1512, 1513, 1520). The ALJ must "consider all evidence in [a claimant's] case record when" making a determination. 20 C.F.R. § 1520. Where supported by medical evidence, the ALJ is required to afford the opinions of medical professionals differing weight based upon their role in providing care to the claimant and their familiarity with the impact of his or her symptoms on functionality. *Gayheart*, 710 F.3d at 375. Under the treating physician rule, the ALJ must afford controlling weight to the opinion of a treating physician as to "the nature and severity of the claimant's impairment" unless that opinion is not supported by "medically acceptable clinical and laboratory diagnostic techniques . . . [or is] inconsistent with the other substantial evidence in the case record." *Rabbers v. Comm'r SSA*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520(d)(2)). As Dr. Mehta is not a treating physician; thus, his opinion was not entitled to controlling weight.

As Plaintiff asserts, an ALJ will "*generally* give more weight to the opinion of a source who has examined [a claimant] than that to the opinion of a source who has not examined [her] [sic]." However, that is not a guarantee. The opinion of a nonexamining source may be afforded more weight than an examining source depending upon how well the opinion is grounded in the record, the consistency of the opinion with the record, whether the opinion is from a specialist or a general practitioner, and other factors such as the source's familiarity with the record as a whole. 20 C.F.R. §§ 404.1527(c)(2)-(6).

As the ALJ noted, Plaintiff's medical records demonstrate that he experienced consistent improvement in pain levels and continued "significant relief" from pain medications. In May of 2006, Plaintiff reported that his pain was mild—7 out of a possible 10—just three weeks before leaving for Africa on a mission trip. Nearly one year later, his pain was also reported as mild, but Plaintiff only estimated the severity of that pain at 4 out of possible 10. Further, as the ALJ noted, Plaintiff was apparently not taking the full prescribed dosage of pain medications. The Magistrate Judge also notes that neither Dr. Mehta nor the nonexamining sources were recognized experts in orthopedics, and Dr. Mehta's report does not reflect a review of Plaintiff's overall treatment history.

Thus, the Magistrate Judge finds substantial evidence to support the ALJ's decision to afford more weight to the opinions of the nonexaminings sources than to that of Dr. Mehta.

**B.** *The ALJ's treatment of radiographic images of Plaintiff's spine.*

Plaintiff next questions the ALJ's treatment of the radiographic films of his spine and whether an ME was required to interpret those films. However, as the Commissioner points out, the rules governing an ALJ's treatment of medical evidence give the ALJ a great deal of latitude when interpreting medical source evidence and only require an ME when that evidence is "conflicting or confusing." *See* 20 C.F.R. §§ 404.1512, 1513, 1528, 1529, 1546(c); HALLEX I-2-5-34)(A). Further, as the ALJ noted, the radiographic films do little to support Plaintiff's contention that he is completely disabled.

While the reviewer's notes do indicate "extensive facet degenerative changes" as Plaintiff asserts, no fractures or subluxations were noted, the "[v]ertebral body height [was] maintained," and both the "sacrum and sacroiliac joints [were] normal [in] appearance." (AR at p. 446) In context with the medical notes from Plaintiff's pain management provider detailing normal

strength in Plaintiff's lower extremities and his sensory perception to light touch, the x-rays provide substantial evidence for the residual functional assessment of the ALJ.

**C.** *The ALJ's treatment of Plaintiff's credibility*

Plaintiff asserts that the ALJ failed to properly address Plaintiff's credibility. According to Plaintiff, the ALJ focused on Plaintiff's minimal activities to conclude that Plaintiff's claims are not credible, the ALJ failed to state whether he found Plaintiff's testimony credible, and the ALJ failed to state the amount of weight afforded to Plaintiff's subjective claims.

As the Commissioner notes, "[t]he credibility of an individual's subjective statements determines the extent to which" those statements will be found credible. SSR 96-7p, 1996 WL 374186. Factors to be considered are: 1) a claimant's activities of daily living; 2) the location, duration, and frequency of the individual's pain; 3) factors that precipitate or aggravate a claimant's condition; 4) type, dosage, effectiveness, and side effects of any medication the individual takes; 5) any other treatments received to control a claimant's condition; 6) any measures a claimant takes to alleviate his symptoms; and 7) other factors concerning his physical limitations due to pain. 20 C.F.R. § 404.1529(c).

Contrary to Plaintiff's claims, the ALJ specifically found that Plaintiff "is not entirely credible regarding the severity of his impairment," and was afforded some credibility to the extent his subjective complaints were consistent with the medical evidence. (AR at p. 18) Also contrary to Plaintiff's claims, the ALJ did not focus exclusively on Plaintiff's activities of daily living. The only mention made by the ALJ to Plaintiff's activities of daily living was his ability to deliver a sermon twice a month. (AR at p. 18) Other than testifying that he watches television and plays a hand of cards with his mother (AR at p. 38), Plaintiff failed to include any activities

of daily living on any of the pain or headache questionnaires he was required to submit. (AR at pp. 131-36, 149-54)

Rather, the ALJ focused almost exclusively on the evidence, or lack of evidence, contained within the record that belied Plaintiff's claims. As the ALJ found, while there was some indication in the record that Plaintiff experienced a restricted range of motion, notes from Plaintiff's pain management physician indicated that the strength in Plaintiff's lower extremities remained normal (5/5) and he was able to sense light touch. Plaintiff ambulated with a normal gait, pain medications relieved his symptoms, and, eventually, Plaintiff was no longer taking the full dosage prescribed. (AR at p. 18) Further, despite the reduced dosage of pain medications, Plaintiff consistently reported his pain as mild and characterized it as a 4 of 5 on a scale from 1 to 10. (AR at 362-85, 389-97) As further support, the ALJ acknowledge that Plaintiff had lost his medical insurance but failed to seek "treatment at an emergency room or medical facility that normally accepts patients at subsidized cost or no coat." (AR at p. 18)

As such, the Magistrate Judge finds the ALJ's credibility assessment of Plaintiff to be in accord with the regulations and supported by substantial evidence.

### D. *Plaintiff's use of a cane*

Plaintiff's last assignment of error is in regard to the ALJ's failure to accommodate Plaintiff's use of a cane in the final residual capacity assessment. (Motion at p. 10) However, as the Commissioner points out, "there is no medical evidence that demonstrates that Plaintiff's cane [is] medically necessary." (Response at p. 13) In fact, the only evidence in the record points to the contrary. Despite Plaintiff's use of a cane, the Commissioner's prior determination found that Plaintiff was not prescribed a cane for ambulation as of April 28, 2006. (AR at p. 52) Plaintiff "is barred from re-litigating [that] issue here. *See Drummond v. Commissioner of Social*

*Sec.*, 126 F.3d 837, 843 (6th Cir. 1997).  As Dr. Allison noted, there is no evidence in the record before the ALJ that a cane has been prescribed subsequently.  (AR at p. 439)  Thus, Plaintiff's argument is without merit and should be denied.

## V. CONCLUSION

For the foregoing reasons, the Magistrate Judge finds that the ALJ's determination to be supported by substantial evidence.

## VI. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the plaintiff's motion for judgment on the record (DE 12.) be **DENIED**, Defendant's motion for judgment on the record be **GRANTED**, and the ruling of the ALJ be **AFFIRMED**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein.  A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal.  *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 12th day of May, 2014.

/s/Joe B. Brown
Joe B. Brown
Magistrate Judge